UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN


**COMPLAINT**

ALEXANDER DYKE,
BY HIS GUARDIAN,
VIRGINIA DYKE

File No. _____

       Plaintiff,

Hon. _____

v.

NICK LYON, Director, Michigan
Department of Health and Human Services, in his
official capacity; MICHIGAN DEPARTMENT
OF HEALTH AND HUMAN SERVICES; CONNIE
CONKLIN, Director of Livingston County Community
Mental Health, in her official capacity; LIVINGSTON
COUNTY COMMUNITY MENTAL HEALTH; JANE
TERWILLIGER, Executive Director, Community
Mental Health Partnership of Southeast Michigan,
in her official capacity; and COMMUNITY
MENTAL HEALTH PARTNERSHIP OF SOUTHEAST
MICHIGAN,

       Defendants.
_____/

MICHIGAN PROTECTION & ADVOCACY
SERVICE, INC.
Andrea L. Rizor (P78382)
Attorney for Plaintiff
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
Phone: (517) 487-1755
_____/

## **COMPLAINT**

Plaintiff, through counsel, states:

### **INTRODUCTION**

1.  Virginia Dyke, on behalf of her son, Alexander Dyke, brings this action pursuant to 42 U.S.C. § 1983 based on violations of rights expressly conferred by the Social Security Act; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 et seq.

2.  Alexander Dyke, Plaintiff, a 29 year-old Medicaid beneficiary with developmental disabilities, has relied on Medicaid community living arrangement services to live and participate in the community for over 10 years.

3.  While Defendants have authorized and deemed these community living support services medically necessary, Plaintiff has not been provided with the medically necessary services for the past eight months.

4.  Plaintiff has been hospitalized twice and placed in a specialized residential setting since the loss of his community living supports.

5.    Defendants knew the loss of Plaintiff's community living support services would likely result in Plaintiff requiring placement in specialized residential.

6.    Defendants have failed to provide Plaintiff with his medically necessary community living support services because Defendants do not maintain a provider network with the capacity to meet the needs of the region.

7.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983 based on violations of his rights expressly conferred by the Social Security Act. These rights include the right to have medical assistance furnished to Plaintiff with reasonable promptness under 42 U.S.C. §1396(a)(8) and 42 U.S.C. § 1396(a)(10); and Plaintiff's right to have services provided to him in the amount, duration, and scope required to meet his needs as required under 42 C.F.R. § 440.230(b). Plaintiff further brings this action pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 et seq.

## JURISDICTION AND VENUE

8.    This action arises under 42 U.S.C. § 1983; 29 U.S.C. § 794; and 42 U.S.C. § 12131 et seq.

9.    Jurisdiction is conferred by 28 U.S.C. §§ 1331, 1343(a)(3)(4).

10.   Declaratory and injunctive relief are authorized pursuant to 28 U.S.C. §§ 1343, 2201, 2202; 29 U.S.C. 794a; 42 U.S.C. § 1988; and 42 U.S.C. §12133.

11.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as all of the events complained of below occurred in the Eastern District, Livingston County, Michigan.

**PARTIES**

12.   Plaintiff is a qualified individual with a disability diagnosed with Autism Spectrum Disorder. His impairments substantially limit his ability to care for himself and live independently.

13.   At all relevant times Plaintiff has been and continues to be a Medicaid beneficiary.

14.   Plaintiff brings this action through his mother and guardian, Virginia Dyke.

15.   Plaintiff resides in Livingston County, Michigan, with his mother Virginia Dyke, which is in this judicial district.

16.   Defendant Livingston County Community Mental Health was established by Public Act 258. The "purpose of a community mental health services program shall be to provide a comprehensive array of

mental health services appropriate to conditions of individuals who are located within its geographic service area, regardless of an individual's ability to pay." MCL 330.1206. It is required to provide mental health services to adults living in Livingston County with serious mental illness, children with severe emotional disturbance, and individuals with developmental disabilities.

17.   Defendant Connie Conklin is the Executive Director of Livingston County Community Mental Health and is being sued in her official capacity.

18.   Defendant Nick Lyon is the Director of Michigan Department of Health and Human Services (MDHHS), the agency designated as the single state agency responsible for administering and implementing Michigan's Medicaid program. 42 U.S.C. § 1396a(a)(5).

19.   As Director, Lyon is responsible for ensuring Michigan's Medicaid program is administered and implemented consistent with the requirements of the Medicaid Act.  He is being sued in his official capacity.

20.   Jane Terwilliger is the Executive Director of the Community Mental Health Partnership of Southeast Michigan (CMHPSM), an agency

created by state law. MCL 330.1204b. Ms. Terwilliger is being sued in her official capacity.

21. The CMHPSM is a specialty prepaid health plan considered a Medicaid managed care organization under MCL 400.109f. A Medicaid managed care organization "provides or arranges for services for enrollees." 42 U.S.C. § 1396u-2(a)(1)(B).

22. MDHHS is a state department operating Medicaid, an activity or program, a recipient of federal financial assistance, and a public entity, as those terms are defined under 29 U.S.C. § 794 and 42 U.S.C. § 12131.

23. CMHPSM and CMH are public entities administering Medicaid, a program or activity, for purposes of 29 U.S.C. § 794 and 42 U.S.C. § 12131.

## FACTS

24. Medicaid is a program created by federal law that provides the states with financial assistance to furnish medical care to needy individuals. Participating states administer the Medicaid program in compliance with federal law.

25. States submit a plan for how the Medicaid program will be administered, called the State Plan 42 U.S.C. § 1396a(a).

26.  The State Plan contains and describes the nature and scope of the State's Medicaid program. 42 C.F.R. § 430.10.

27.  Michigan's State Plan includes the provision of home and community based services to approved Medicaid beneficiaries under a waiver, "granted under 42 C.F.R. Part 441, subpart G," who would otherwise require services in a facility. Attachment 2.2-A to the Michigan State Plan. This waiver is called the Habilitation Supports Waiver (Hab Waiver) in Michigan.

28.  Michigan elected, applied, and was approved to receive funding to furnish waiver services under 42 U.S.C. § 1396n to assist individuals with developmental disabilities with activities of daily living necessary to permit them to live in their own home or rental unit furnished in a community supported living arrangement setting.

29.  Waivers are granted to "permit states to offer, under a waiver of statutory requirements, an array of home and community-based services that an individual needs to avoid institutionalization." 42 C.F.R. § 441.300.

30.  Federal law lists the type of community living arrangement services which must be offered under the waiver. 42 U.S.C. § 1396u and 42 C.F.R. § 440.180.

31.  Michigan chose to make all Medicaid home and community-based community living arrangement services under 42 U.S.C. § 1396u and 42 C.F.R. § 440.180 mandatorily available to individuals on the Hab Waiver. MCL 400.109c.

32.  The definition of community supported living arrangement services includes "approved services which assist a developmentally disabled individual in activities of daily living necessary to permit that individual to live in their own apartment in a community supported living arrangement setting." 42 U.S.C. § 1396u. It also includes personal assistance and "support services necessary to aid an individual to participate in community activities." 42 U.S.C. § 1396u(a)(7).

33.  Plaintiff receives community living arrangement services under the Hab Waiver.

34.  Defendants determined Plaintiff has a developmental disability and "if not for the availability of the home and community-based services, this individual would require the level of care provided in an intermediate care facility for the mentally retarded (ICF/MR)." Hab Waiver Eligibility Certification.

35.  Plaintiff has a history of behavioral and sensory integration issues that arise from his developmental disabilities.

36. Plaintiff requires prompting in all areas of his activities of daily living, including but not limited to dressing, brushing his teeth, and taking a shower.

37. Defendant agrees Plaintiff requires 24-hour supervision.

38. Plaintiff needs guidance with behavioral issues, completing tasks, following rules, and doing activities independently.

39. For the last decade, Plaintiff has successfully lived in the community with his mother with the assistance of community living arrangement services in the home.

40. Since living in Livingston County, Plaintiff has received or been approved for 39.5 hours per week of community living arrangement services titled community living supports (CLS).

41. In late 2014, Plaintiff's mother's health began to decline and she started to have a more difficult time providing the remaining care for Plaintiff.

42. Livingston County Community Mental Health (CMH) was aware Plaintiff's mother's decline in health started affecting her ability to provide natural supports to Plaintiff and was affecting Plaintiff's care.

43. In May 2015, CMH terminated Plaintiff's ability to employ his own community living supports staff with the help of his mother, which

stemmed from his mother's decline in health. CMH notified Plaintiff it would instead contract with a provider agency to furnish the medically necessary community living support services he required. CMH thus bears the responsibility for recruiting, contracting, hiring, training, and monitoring services provided to Plaintiff.

44.   Plaintiff continues to require CLS services and remains authorized to receive CLS services; which have not been provided.

45.   Since May 2015, Plaintiff has been to the Emergency Room three times for aggressive behavior and decompensation, has been admitted to the hospital twice where he was physically restrained, and has spent time in a specialized residential facility where he was physically and chemically restrained.

46.   Individuals receiving services under the Hab Waiver are entitled to have the choice between institutional or home and community-based services. 42 C.F.R. § 302(d).

47.   Plaintiff and his mother made repeated requests for the provision of community living support services.

48.   On September 21, 2015, Plaintiff received written notice of the delay in service with regards to the lack of community living supports. The notice of delay stated the reason which included: "Referrals have

been made to provider agencies. None have indicated they have the capacity to accept this referral at this time." Adequate Action Notice Dated September 21, 2015.

49. According to CMH records, Livingston County CMH promised Plaintiff and his mother in October 2015 CMH had done everything they could to obtain services for Plaintiff, but that there were none available.

50. The following month, Plaintiff was admitted to the Emergency Room for aggressive behavior. According to CMH records, CMH recommended discharge to specialized residential because Plaintiff's mother was unable to provide the care Plaintiff needed. Plaintiff was ultimately discharged back home again without the medically necessary community living support services he required.

51. Later that same month, CMH once again determined placement in the home remains appropriate for Plaintiff.

52. In December 2015, CMH located a provider to furnish the services to Plaintiff. After six weeks the provider has yet to hire staff to serve Plaintiff.

53. MDHHS contracts with CMHPSM, a Medicaid managed care organization, to provide or arrange for services for enrollees. 42 U.S.C. § 1396u-2(a)(1)(B); MCL 400.109f.

54. CMHPSM contracts with CMH to provide or arrange services for Medicaid enrollees, an organization statutorily required to provide and arrange for mental health services to individuals with developmental disabilities in its region.

55. CMHPSM, as a Medicaid managed care organization is also responsible for "providing defined inpatient services, outpatient hospital services, physician services, other specified Medicaid state plan services, and additional services approved by the centers for Medicare and Medicaid services under section 1915(b)(3) of title XIX of the social security act, 42 U.S.C. § 1396n." MCL 400.109f.

56. Defendants' decisions to not offer an appropriate provider reimbursement rate in the region has made it difficult, if not impossible, for Plaintiff to receive services in the community with reasonable promptness.

57. Defendants have underfunded a mandatory Medicaid waiver service to the degree providers cannot afford to properly serve and meet the needs of Plaintiff and other Medicaid beneficiaries in the community.

58. Medicaid policy prohibits services from "being denied solely on preset limits of the cost, amount, scope, and duration of services. Instead, determination of the need for services shall be conducted on an

individualized basis." Michigan Medicaid Provider Manual, MA/SA p 14.

59. Medicaid pays Defendants to provide case management services to Plaintiff, as defined by 42 U.S.C. § 1396n(g)(2).

60. These services, among other things, include making referrals so individuals can obtain needed services, linking individuals to medical providers capable of providing needed services, taking steps to ensure the care plan is effectively implemented, making sure services are being furnished and are adequate, etc.

61. Defendant MDHHS is required to have methods of keeping itself informed of local agency adherence to the State Plan and take corrective action to ensure adherence. 42 C.F.R. § 435.903.

62. Public entities must administer their programs in the most integrated setting appropriate to the individuals' needs. 28 C.F.R. § 35.130(d).

63. Isolation and segregation of individuals with disabilities severely limit a person's exposure to the outside community and is a pervasive form of discrimination. 42 U.S.C. §§ 12101(a)(2), (5).

64. Segregation "perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life."

*Olmstead v. LC ex rel Zimring*, 527 U.S. 581, 600; 119 S. C.t. 2176, 2187; 144 L. E.d. 2d 540 (1999).

65. Confinement "severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." *Id.*

### FIRST CAUSE OF ACTION
*(*Against Defendants Lyon, Conklin, and Terwilliger)
**Violation of 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. §1396a(a)(10)
Failure to provide medical assistance with reasonable promptness.**

66. Plaintiff incorporates by reference paragraphs 1 through 65, as if fully set forth herein.

67. The Social Security Act, 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. §1396a(a)(10), requires medical assistance to be furnished with reasonable promptness to all eligible individuals.

68. Medical assistance "means payment of part or all of the cost of the following care and services or the care and services themselves, or both." 42 U.S.C. § 1396d(a).

69. Medical assistance includes "community supported living arrangement services" as defined in 42 U.S.C. § 1396u. 42 U.S.C. § 1396d(a)(23). These services are provided for or arranged by the Medicaid managed care organization.

70. Upon information and belief, Defendants subcontract out the provision of care and services defined as CLS.

71. Plaintiff has not received medically necessary community living support services as authorized under his plan of care for over eight months.

72. Defendants have failed to furnish medical assistance.

73. Defendants' decision to set and allow reimbursement rates so far below that which even the general public pay providers for the same or similar services has made it impossible for Plaintiff to receive adequate medically necessary services with reasonable promptness, in violation of 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. § 1396 a(a)(10)(A).

74. Inadequate reimbursement rates have effectively denied Plaintiff the right to medical assistance in violation of 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. § 1396 a(a)(10)(A).

75. Defendants have violated Plaintiff's clearly established rights under 42 U.S.C. § 1396a(a)(8) and 42 U.S.C. § 1396a(a)(10)(A), rights enforceable by Plaintiff pursuant to 42 U.S.C. § 1983.

76.  Defendants' actions, under color of state law, have harmed Plaintiff by depriving him of medically necessary care, disrupting and diminishing his development and mental health.

77.  The harm to Plaintiff is irreparable. He has no adequate remedy at law to prevent the continuing wrong and irreparable injury caused by Defendants' acts.

### SECOND CAUSE OF ACTION
**(Against Defendants Lyon, Conklin, and Terwilliger)**
**Failure to authorize services in the amount, scope, or duration to reasonably achieve their purpose; in violation of 42 § C.F.R. 440.230(b).**

78.  Plaintiff incorporates by reference paragraphs 1 through 77, as if fully set forth herein.

79.  Under 42 C.F.R. § 440.230(b), "each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose."

80.  Plaintiff is entitled to receive his medically necessary community living support services, but hasn't received those services to assist him with participating in community activities and prevent institutionalization.

81.  Defendants have offered agency providers so little pay to serve Plaintiff he cannot get nor is he receiving the services within the amount, scope, and duration he needs.

82.  Because Plaintiff has not received his community living support services he has become more isolated and segregated from society.

83.  Plaintiff has not received services sufficient in scope to achieve the services' purpose to prevent institutionalization and to allow him to participate meaningfully in the community, in violation of his clearly established rights under 42 U.S.C. § 1396(a)(10)(B) and 42 C.F.R. § 440.230(b), rights enforceable by Plaintiff pursuant to 42 U.S.C. § 1983.

84.  Defendants' actions, under color of state law, have harmed Plaintiff by depriving him of medically necessary care, disrupting his development and mental health.

85.  The harm to Plaintiff is irreparable. He has no adequate remedy at law to prevent the continuing wrong and irreparable injury caused by Defendants' acts.

## THIRD CAUSE OF ACTION
### (Against Defendants MDHHS, CMH, and CMHPSM)
### Violation of the ADA - Title II, 42 U.S.C. § 12131 et seq.

86.  Plaintiff incorporates by reference paragraphs 1 through 85 as if fully restated herein.

87. Title II of the Americans with Disabilities Act of 1990 (Title II), 42 U.S.C. § 12131 et seq., prohibits disability-based discrimination against qualified individuals by public entities.

88. MDHHS, MHPSM, and CMH are public entities receiving federal funds to administer the Medicaid program in Michigan. 42 U.S.C. § 12131(1).

89. Plaintiff is an individual with a disability within the meaning of the ADA. 42 U.S.C. § 12102(1). Specifically, Plaintiff is an individual with a disability whose impairment substantially limits one or more of his major life activities, has a record of the impairment, and is regarded by Defendants as having the impairment.

90. Plaintiff is a qualified individual, as that term is defined in the ADA. 42 U.S.C. § 12131(2). With or without reasonable modifications to the Defendants' rules, policies, or practices, Plaintiff meets the essential eligibility requirements to receive Medicaid.

91. Defendants' failure to provide Plaintiff with medical assistance with reasonable promptness has denied him the equal benefits of the Medicaid program, and subjected him to discrimination under Medicaid, a program receiving federal financial assistance, solely because of his disability in violation of Title II.

92. Defendants have violated Title II by failing to set rates at a level sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

93. Defendants' failure to provide Plaintiff with the full benefits of the home and community based waiver services resulted in his placement in a specialized residential for individuals with disabilities, the psychiatric ward, and continues to put him in serious risk of being institutionalized, in violation of Title II. *Olmstead*, 527 U.S. 581.

94. Defendants' failure to administer services such that Plaintiff can receive the same or similar services in the community as he can in an institution or institution-like setting violates Title II, by placing him at risk of institutionalization.

95. Defendants' violation of Plaintiff's rights under Title II has harmed Plaintiff by depriving him not only of medical services and placing him in institutionalized settings, it has disrupted and diminished his development and mental health.

96.   The harm to Plaintiff is irreparable. He has no adequate remedy at law to prevent the continuing wrong and irreparable injury caused by Defendants' acts.

### FOURTH CAUSE OF ACTION
**(Against Defendants MDHHS, CMH, and MHPSM)**
**Violation of Section 504 of the Rehabilitation Act of 1973,**
**29 U.S.C. § 794**

97.   Plaintiff incorporates by reference paragraphs 1 through 96 as if fully restated herein.

98.   Plaintiff is an individual with a disability.  Specifically, Plaintiff is an individual with a disability whose impairment substantially limits one or more of his major life activities, has a record of the impairment, and is regarded by Defendants and its agents as having the impairment.

99.   Plaintiff is a qualified individual with a disability.  With or without reasonable modifications to Defendants' rules, policies, or practices, Plaintiff meets the essential eligibility requirements to receive Medicaid.

100.  Medicaid is operated by MDHHS. Medicaid is a federally funded program. Medicaid is a program and activity administered by MDHHS (a state department), CMHPSM (an instrumentality of the state), and CMH (an instrumentality of the state).

101. Defendants' failure to provide Plaintiff with medical assistance with reasonable promptness has denied him the equal benefits of the Medicaid program, and subjected him to discrimination, solely because of his disability in violation Section 504 of the Rehabilitation Act of 1973, and its implementing regulations. 29 U.S.C. § 794.

102. Defendants have violated Section 504 by failing to set rates at a level sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

103. Defendants' failure to provide Plaintiff with the full benefits of the home and community based waiver services resulted in his placement in a specialized residential for individuals with disabilities, the psychiatric ward, and continues to put him in serious risk of being institutionalized, in violation of Title II.

104. Defendants' failure to administer services such that he can receive the same or similar services in the community as he can in an institution or institution-like setting, placing him at serious risk of institutionalization violates Section 504.

105. Defendants' violation of Plaintiff's rights under Section 504 has harmed Plaintiff by depriving him not only of medical services, but by disrupting and diminishing his development and mental health by forcing him into institutionalized settings and isolating him at home.

106. The harm to Plaintiff is irreparable. He has no adequate remedy at law to prevent the continuing wrong and irreparable injury caused by Defendants' acts.

## REQUESTED RELIEF

Wherefore, Plaintiff respectfully requests this Court to:

A.    Enter a preliminary injunction ordering Defendants to authorize payment for services in a manner that ensures services will be provided with reasonable promptness.

B.    Enter a judgment ordering Defendants to authorize payment for services in a manner that ensures services will be provided with reasonable promptness.

C.    Order Defendants to increase provider reimbursement rates and take other action such that provider networks can meet regional needs.

D.    Order Defendants Lyon and MDHHS to standardize CLS provider rates throughout the state at a rate which ensures

services will be provided by qualified staff with reasonable promptness.

E.   Enter a judgment against Defendants in an amount consistent with damages sustained.

F.   Grant attorney's fees and costs.

G.   Grant such other relief as it may appear Plaintiff is entitled or this court deems necessary.

Respectfully submitted,

Dated: February 3, 2016          s/_____
                                 Andrea L. Rizor
                                 Michigan Protection and Advocacy
                                 Service, Inc.
                                 4095 Legacy Parkway, Ste. 500
                                 Lansing, MI 48911
                                 (517) 487-1755
                                 P78382